[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
BACKGROUND
This is an action brought by the Plaintiff wife against the Defendant husband for dissolution of their marriage on the grounds of irretrievable breakdown. The parties were married on August 11, 1981 in Tokyo, Japan. CT Page 6621 They have four minor children issue of the marriage: Renee Egusa, born January 25, 1984; Tristan Egusa, born November 19, 1985; Conrad Egusa, born December 1, 1987; Jared Egusa, born June 1, 1990.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders and trial memoranda. Based upon the evidence, the court makes the following findings.
This action was commenced on October 9, 1998. The court has jurisdiction, and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground. The Plaintiff is 47 years old and is in good health. She received her Bachelor of Arts degree in 1982 from Columbia University and met the Defendant while studying on a fellowship in Japan in 1980. After the parties marriage in 1981, they returned to New York where the Defendant began working at Manufacturer's Hanover Bank with a salary of $27,000. The Plaintiff was accepted into a master's program at the University of Chicago which would have qualified her to teach Japanese at the college level. However, at Defendant's request, she did not enter the program but began working as a bank teller in New Canaan. She took courses toward a master's degree in banking but never completed her degree. The Defendant received a Bachelor's degree from Stanford University.
In 1983, the parties purchased and moved into a home in New Canaan. After the birth of their first child in 1984, the Plaintiff functioned as primary caretaker and homemaker. To assist in supporting the family, the Plaintiff took various odd jobs while, without household help or assistance from the Defendant, she continued as primary caretaker of their four children and as homemaker. From the Defendant's first job at Manufacturer's through November 1999, when he accepted a position with IBJ Securities earning $140,000 plus bonuses, the Defendant, despite an enormous earning capacity had an erratic work history frequently evidencing both lack of effort and concern for his family obligations.
The Defendant is presently 46 years old and in good health. In 1992 he earned almost $700,000, in 1996 $187,000, in 1997 $382,000 and in 1998 $471,000. However, in 1993 he earned wages of $11,070, in 1994 $297 and in 1995 $23,632. According to the Defendant, he has earning capacity in the United States of approximately $200,000 per year and in Japan more than $300,000 per year.
For those periods when the Defendant was employed, he worked long hours, at least six days a week. Because of this schedule, he paid little CT Page 6622 attention to his wife and children. The parties had few friends because the Defendant was not interested in socializing. The Defendant made no effort to maintain a warm loving relationship.
As a result of the Defendant's repeated periods of unemployment, and despite the Plaintiff's numerous efforts to earn money in addition to her full-time role as caretaker and homemaker, the parties fell into debt and were forced to sell their first New Canaan home which had been used as rental property for income.
In April of 1997, after learning that the Defendant intended to quit his job, the Plaintiff began to explore the possibility of a divorce. At present the family has no substantial assets, other than the family home. They have a tremendous amount of debt. Recently, the Plaintiff enrolled as a full time college student at SUNY-Purchase, working toward a degree in computer graphics in an effort to pursue a career which could help provide additional income for herself and her children.
The parties have reached an agreement on issues relating to the care, custody and parenting of the children. In accordance with the agreement, the parties are awarded joint legal custody of the four minor children Renee Egusa, Tristan Egusa, Conrad Egusa and Jared Egusa. The Plaintiff shall be primary residential parent, with certain specified visitation rights to the Defendant detailed on Exhibit A attached hereto. The court has carefully considered the criteria set forth, in General Statutes §§ 46b-62, 46b-81, 46b-82, 46b-84 and the applicable case law in reaching the decisions reflected in the orders that follow:
 1. The marriage of the parties, having broken down irretrievably is hereby dissolved.
 2. Custody of the four minor children shall be as hereinbefore set forth.
 3. The Defendant shall continue existing medical coverage for the benefit of the children for so long as he is responsible for their support. Medical expenses for the children that are unreimbursed by insurance shall be shared equally by the parties. This allocation is a deviation from the family support guideline recommended percentages, but such deviation is appropriate as part of the coordination of total family support and it would be inequitable to require compliance with the guidelines in this respect. The Plaintiff shall be entitled to the continuation of her current coverage under the Defendant's group medical plan, at her expense, for the maximum period allowed by law. The Defendant shall cooperate with the wife's continuation of said coverage under COBRA. Any CT Page 6623 qualified child care expenses shall be paid in accordance with the support guidelines.
 4. As provided by Stipulation of the parties dated May 15, 2000, the parties shall immediately place their jointly owned New Canaan home on the real estate market for sale and:
 A. From the date of this Court's Memorandum of Decision until the parties sell their residence and a closing takes place, the parties' Stipulation of February 22, 2000 (incorporating by reference and modifying their December 20, 1999 Stipulation re: Pendente Lite Finances and Sale of Home Pendente Lite) previously made an Order of this Court shall remain in fill force and effect except that: (i) the following additional debts (not specified in said prior Stipulations) listed in subsection (I) shall be paid off the top from the closing of sale proceeds before distribution of net proceeds is made to either party; and (ii) the following debts set forth in the December 20, 1999 and February 22, 2000 Stipulations listed in subsections (II)-(IV) hereof have changed and new amounts are shown therein.
 (I)(a) George Egusa (defendant's father)[1] $5,000.00 (b) Milton Brownstein (plaintiffs brother)[1] 8,500.00 (c) Barbara Herbert (parties' co-realtor)[2] 2,000.00 (d) Northeast Utilities 168.00 (e) Home Oil (new debt is $1,093 [after indebtedness shown on parties' financial affidavits was reduced post trial to $0.00]). $1,093.00
 (II) The following indebtedness listed as joint debts on at least one party's financial affidavit have been paid in full and there is no outstanding balance.
(a) Bell Atlantic
(b) New Canaan Medical Group
(c) Dr. Butler
(d) Bank loan ($5,000)
(e) Snow plowing
 (III) The following indebtedness listed as joint debts on at least one party's financial affidavit at trial have been changed since trial: CT Page 6624
(a) AMEX was $10,320, now is $6,534 plus late fees that accumulate.
 (b) Citicorp mortgage and tax escrow was $9,048 and now is $4,705 including late fee.
 (c) Distinctive Maintenance (landscaping) was $4,200 and now is $4,470 and growing at a rate of $90 per week.
 (d) Summit Bank (two cash reserves) was $9,048 or more and now is $25,000.
 (IV) (a) The plaintiff's attorney's fees balance was shown as $9,349.37 at the beginning of trial and had increased to $30,633.27 at the time of filing her trial brief Today, the balance due Schoonmaker, Geroge Colin, P.C. is $34,036.14.
 (b) The defendant's attorney's fees balance was shown on his financial affidavit as $15,489.00 at the beginning of trial and had increased to $41,878.58 at the time of filing his trial brief Today, the balance due Wofsey, Rosen, Kweskin 
Kuriansky, LLP is $45,315.58.
 (c) Sari Jaffe Esq. was due a balance of $2,096.75 at trial. Today the balance due Attorney Jaffe is $3,542.25.
 (V) Any debts hereafter incurred by the parties for the benefit of the family that are mutually agreed upon by the parties and their attorneys shall be repaid to the lender off the top from the closing proceeds of the parties' residence.
 B. The debts shown in the Paragraphs above are to be paid off of the top (as are brokerage fees, conveyance taxes and the usual and customary costs of closing) from the closing proceedings before the net closing proceeds are to be divided between the parties.
 C. In addition to the provisions of said Stipulation, it is ordered that the net proceeds from the closing shall be divided between the parties 60% to the Plaintiff and 40% to the Defendant. Any debt incurred by either party after the date of this Memorandum of Decision other than as provided in par. V, supra, shall be paid solely from that party's share of the net proceeds before distribution to such party of his/her share, unless agreed otherwise in writing by both parties. CT Page 6625
 D. The Plaintiff shall receive the following items of personal property located in the New Canaan home:
her computer;
chiidren's furniture;
contents of her bedroom; and
bowls and plates from Japan.
 E. The parties shall divide their furniture and furnishings as they may see fit but in the absence of agreement the matter shall be referred to the Family Services Office for division on approximately 50-50 basis. The court shall retain jurisdiction to resolve this issue should agreement not be reached.
 F. The court retains jurisdiction over any and all issues which may arise concerning the sale of the marital residence, including but not limited to the establishment of a listing price, terms of the listing, each party's compliance with the listing agreement and acceptance of offers to purchase.
 5. The Defendant shall pay to the Plaintiff $3000 per month as alimony and $2639 per month as child support. This child support amount is in accordance with the child support guidelines. In addition as alimony, the Defendant shall pay to the Plaintiff 35% of any bonus which he may receive from work. Alimony, including percentage of bonus, shall terminate upon the death of either party, the Plaintiff's remarriage, statutory cohabitation, or June 1, 2009, whichever comes first. Child support shall be reduced in accordance with the child support guidelines in effect as each child reaches his/her majority.
 6. Each of the parties shall be entitled to take two children as dependency exemptions for income tax purposes. The Plaintiff shall be entitled to claim head of household tax filing status. Until the New Canaan property is sold, the parties shall divide the mortgage interest and property tax deductions for 1998, 1999 and 2000 (until the premises are sold) on a 50-50 basis.
 7. Both parties shall disclose in writing, to the other, immediately any change in or related to employment, and shall provide, with such disclosure, all terms and conditions of employment.
8. The Plaintiff shall receive the 1998 Toyota RAV-4 and the Defendant CT Page 6626 shall receive the 1995 Volvo 850 GLT. Both parties will execute all documents necessary to effectuate this provision.
 9. The Plaintiff shall retain her Fidelity IRA and the Defendant shall retain all bank and brokerage accounts remaining in Japan, if any.
 10. For so long as the Defendant is obligated to make alimony and/or support payments, the Defendant shall name the Plaintiff as sole and irrevocable beneficiary of all life insurance available to him as an incident to his employment. The Defendant shall, forthwith, submit to a life insurance examination as directed by a licensed life insurance agent of the Plaintiff's own selection. Following said examination, the Plaintiff shall have the right to petition this court for appropriate orders of additional life insurance and this court shall retain continuing jurisdiction to enter appropriate orders to further secure the Defendant's alimony and child support obligations with additional life insurance in an amount commensurate with the court's alimony and child support orders. Life insurance for the benefit of the children, once obtained pursuant to this order, shall be maintained until they attain majority and have graduated from high school or until 19 years of age if still in high school.
 11. Counsel for the Plaintiff shall prepare and sign the judgment file within 30 days and forward the same to counsel for the Defendant for signing and returning to court.
HILLER, J.
EXHIBIT A
FA-98-0168321-S : SUPERIOR COURT :
TERRY EGUSA : J.D. OF STAMFORD/NORWALK :
v. : AT STAMFORD :
KENNETH EGUSA : SEPTEMBER 27, 1999
 PARENTING PLAN
The parties stipulate as follows:
 1. They have four children, namely: Renee born January 25, 1984, Tristan born November 19, 1985, Conrad born December 1, 1987 and Jared born June 6, 1990. CT Page 6627
 2. It is in the best interests of said children that the parties reside in the same relative geographic area (whether or not in the same town or city). so that both parents can have an active parenting role in the upbringing of their children.
 3. The parties agree that Renee is of sufficient age, intelligence and maturity so that her preferences and desires shall be considered by both parents and the parenting plan set forth to adjustment based upon her preferences and desires.
3a. The parties further agree that Tristan shall be of sufficient age, intelligence and maturity so that his preferences will be considered on the first anniversary of the date of dissolution or beginning at age 15, whichever event shall first occur.
 4. The parties agree that the children shall continue to participate in therapy with Donald R. Cohen, PhD., 31 November Trail, Weston, Connecticut, if the child(ren) so desires or the parties mutually agree.
 5. Neither party shall disparage the parent either in the presence of, or outside the presence of, the children, and each party shall take all reasonable steps to encourage the children's love, affection and respect of both parents.
 6. The children shall be with their mother except as provided herein. The children shall be with their father on alternating weekends from Fridays at 7:00 p.m. until Sundays at 7:00 p.m. The father shall pick up the children on Fridays and the mother shall pick up the children on Sundays.
 7. Renee may and Tristan shall (subject to ¶ 3.a above) be with their father every Monday evening from 6:30 p.m. until 9:00 p.m., and Conrad and Jared shall be with their father every Tuesday evening from 6:30 p.m. until 9:00 p.m. Depending upon the children's scheduling, the parties shall be flexible and cooperative regarding which two children visit with their father on Mondays and Tuesdays. But in no event shall Conrad or Jared spend less than one CT Page 6628 weekday evening per week with their father and in the first year after the date of dissolution or until Tristan turns 15. Tristan shall spend at least one weekday evening with father.
 The mother shall bring the children to their father at 6:30 p.m. and the father shall return the children to their mother at 9:00 p.m. In the event Renee and/or Tristan wish to spend an overnight with their father on Monday, then they shall do so and it shall be the father's responsibility to make sure that the children are brought to school the next morning. Conrad and Jared shall spend an overnight with their father (the first Tuesday overnight of each month) which may be revised by the children's therapist (in the best interests of the child(ren) to the first Tuesday and the third Tuesday overnight). A long term goal of therapy shall be that the children will feel comfortable spending more time with their father including a weekday overnight every week with the father. If any of the children wishes not to spend overnights with their father, the father shall return them to the mother's residence at 9:00 p.m. In those instances in which the children are staying with their father on a Sunday, and there is a holiday on the next day (Monday), e.g., Yom Kippur, then instead of returning the children to their mother's house on Sunday, he shall return the children to their mother's house on Monday or to school on Tuesday, if the children agree to remain with their father Monday overnight.
8. Each parent shall have reasonable access by telephone for any reason.
8a. Neither parents' parenting time shall take place in the home of the other without the other's express permission.
9. Notwithstanding the foregoing:
 a) The mother shall have the right to have the children with her on Mother's Day, her birthday, and shall have reasonable access to the children on the children's birthdays should their birthdays fall on a day when they are staying CT Page 6629 with their father; and the father shall have the right to have the children with him on Father's Day, his birthday, and he shall have reasonable access to the children on the children's birthdays should such child's birthday fall on a day when they are staying with their mother.
 b) (1) In even numbered years, the father shall have the right to have the children stay with him on President's Day. Spring vacation from school, Memorial Day, Labor Day, Thanksgiving (Wednesday evening from 6:00 p.m. to Sunday evening at 10:00 p.m.) and Christmas vacation from December 25th at 2:00 p.m. until the end of Christmas vacation, and the children shall be with their mother on Martin Luther King Day, the entire Easter recess, 4th of July, Columbus Day, Veteran's Day, and all other holidays or days off from school not scheduled herein that fall on a Monday, and the beginning of the Christmas recess until December 25th at 2:00 p.m.
 (2) In odd numbered years, the parties shall reverse these holidays such that the wife shall have President's Day, Spring vacation from school, etc. with the children and the husband shall have Martin Luther King Day, the entire Easter recess with the children and so forth.
 c) Each party shall have the right to have the children exclusively with such parry for two consecutive weeks in August each summer. In even numbered years, the children shall stay with their mother for the first two weeks in August and with their father for the third and fourth weeks in August, and in odd numbered years the children shall stay with their father during the first two weeks in August and with their mother during the third and fourth weeks in. August. It is intended in this manner that each party shall have the opportunity to enjoy two consecutive weeks of vacation time with all of the children together. CT Page 6630
10. The parent with whom the children are staying shall make the day to day decisions for such children. For example, when the children are staying with their mother, she shall decide what their curfew is, what movies or television they may or may not watch or the activities in which they are permitted to participate. When the children are staying with their father, he shall make such decisions. In all events said decisions shall be made with the best interests in mind of the children and with due regard to their reasonable preferences. Each parent shall avoid scheduling the other parent's time involving a child without prior consent of the other parent.
11. The parties acting jointly shall make the following major decisions involving the children:
 a) Religious upbringing, major medical and hospitalization determinations (except either parent can without consulting with the other (unless there is time, to do so) make emergency medical decisions and shall notify the other as quickly as time and circumstances permit as to the emergency and the action taken), children's summer plans for June and July and school selections. All decisions of such nature are to be made in the best interests of such child with due regard to financial considerations and to the reasonable preferences of such child. In the event that the parties are unable to agree with respect to a specific decision, then the parties jointly shall consult with the child's pediatrician for medical decisions, the child's dentist for dental or orthodontic decisions, and the child's therapist for mental health and education decisions and such professional shall with such child's input as appropriate make determination to be shared with all relevant parties unless or to the extent a court of competent jurisdiction rules otherwise.
12. The plaintiff shall provide the defendant with written notice at least ninety (90) days in advance of her intention to move outside of New Canaan, Connecticut. Such notice shall include the proposed CT Page 6631 new residence and the reasons for the proposed relocation. In the event either party relocates and for any intended relocation thereafter, such party shall provide the other with the new telephone number as soon as it is known.
13. The parties recognize that this stipulation is intended to allow both parents to have a full and active role in providing a sound moral, social, economic and educational environment for the children. In accepting the broad range of privileges conferred by this arrangement upon each of the parents, they specifically recognize that neither shall exercise such power for the purpose of frustrating, denying or controlling in any manner the other parent or limiting the social development of the children. The parents shall assert their best efforts to work cooperatively in future plans consistent with the best interests of the children and in amicably resolving any disputes that may arise.
14. Each parent is required to use his/her best efforts to implement the spirit and the letter of this agreement.
15. This stipulation is effective as soon as the parties live in separate residences and shall survive the entry of a final decree as the permanent parenting order binding upon the parties in this case.
16. In the event that it shall be determined by a Court of competent jurisdiction that either party shall have breached any of the provisions of this Agreement or of any Court Decree incorporating by reference or otherwise this Agreement or portions thereof, the offending party shall pay to the other party reasonable attorney's fees, court costs and other expenses incurred in the enforcement of the provisions of this Agreement and/or Judgment or Decree incorporating any or all of the provisions hereof.
Dated at Stamford, Connecticut this 8th day of October, 1999. __________ ______________ CT Page 6632 PLAINTIFF (Mother)
 ______________ DEFENDANT (Father)
 ______________ ATTORNEY FOR MINOR CHILDREN